UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: FEB 2 4 2017
```

Mark Andrews p/k/a Sisqo *et al.*

Plaintiffs,

—v—

Sony/ATV Music Publishing, LLC *et al.*,

Defendants.

15-CV-7544 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

This diversity action arises from disputes concerning agreements relating to the publishing and administration of popular music compositions and the collection and distribution of royalties flowing from their exploitation. Before the Court is a motion by Defendants Sony/ATV Music Publishing LLC ("Sony"), EMI April Music, Inc., and EMI Blackwood Music, Inc. (together with EMI April Music, Inc., "EMI") to dismiss implied contract and declaratory judgment claims asserted against them in Plaintiffs' Second Amended Complaint, Dkt. No. 50 ("SAC"). For the reasons set forth below, that motion is GRANTED in full.

I.       Background

A.       Factual Background

Plaintiffs in this case are the well-known recording artists and songwriters Mark Andrews, professionally known as "Sisqo"; James Green, professionally known as "Woody"; and Larry Anthony, Jr., professionally known as "Jazz." SAC ¶¶ 3-6. In 1996, Plaintiffs, then-members of the popular recording group known as "Dru Hill," entered into individual music

publishing and administration agreements with non-party Art of War Music Publishing, Inc.

("Art of War"). *Id.* ¶ 20.  In approximately 2002, Art of War entered into an exclusive

administration agreement with EMI (the "EMI Administration Agreement" or "Agreement"). *Id.*

¶ 21.  The EMI Administration Agreement provided, among other things, that EMI would pay

royalties to artists under contract with Art of War – including Plaintiffs – directly to the artists on

Art of War's behalf.[1]  ¶ 21.

In 2005, Plaintiff Andrews contracted with Defendants 27 Red Music Publishing, LLC

(or its predecessor entity) ("27 Red") and 27 Red's sole owner, the now-deceased Rhondo

Robinson, to collect from EMI certain allegedly unpaid royalties covering the period from 1996

to 2005 (the "Collection Agreement"). *Id.* ¶¶ 7, 24-25.  Notwithstanding the limited temporal

scope of the royalties to be collected under the Collection Agreement, EMI, Plaintiffs allege,

paid royalties due to Andrews for the years 2005 to 2015 to 27 Red, Robinson, and/or other

"John Doe" and "ABC Company" Defendants purportedly affiliated with Robinson. *Id.* ¶¶ 17-

18, 26.  Andrews never received those royalties. *Id.* ¶ 27.  EMI also paid royalties due to

Plaintiffs Anthony and Green to 27 Red, Robinson, and/or the unidentified Defendants, despite

the lack of contractual authority to do so. *Id.* ¶ 28.

### B.    Procedural History

Plaintiffs initiated this action on September 23, 2015, naming as Defendants Sony, 27

---

[1] The parties agree that in 2012, an investor group that included Sony Corporation of America
acquired the EMI Music Publishing group of companies, including EMI, and that Defendant
Sony has administered EMI Music Publishing on behalf of the investor group since that time.
SAC ¶ 19; Memorandum of Law in Support of Motion to Dismiss the Second Amended
Complaint, Dkt. No. 54 ("Br."), at 1 n.1.  EMI and Sony maintain that Sony was incorrectly
named as a Defendant in this lawsuit, but Plaintiffs have declined to withdraw their claims
against it. Br. at 1 n.1.

Red's predecessor entity, Robinson's estate, and Robinson's unidentified affiliates, and asserting claims for breach of contract, breach of fiduciary duty, and conversion. *See generally* Complaint, Dkt. No.1 ("Complaint" or "Compl."). As relevant here, the original Complaint alleged that Plaintiffs were "intended beneficiaries" under the EMI Administration Agreement and asserted a single breach of contract claim against Sony, averring that its payment to 27 Red, Robinson, and Robinson's unidentified affiliates of post-2005 royalties due to Andrews, as well as any royalties due to Green and Anthony, violated that Agreement. Comp. ¶¶ 31-35. In February 2016, Plaintiffs filed an amended complaint, Dkt. No. 18 ("FAC"), continuing to maintain breach of the EMI Administration Agreement as their sole theory of liability as against Sony and/or EMI. FAC ¶¶ 51-56.

Sony and EMI moved to dismiss the FAC.[2] Dkt. Nos. 36-38. They argued primarily that Plaintiffs' contract claim was foreclosed by the plain language of the EMI Administration Agreement, which ran between EMI and Art of War and specifically recited that Plaintiffs would not be third-party beneficiaries of the Agreement or enjoy any rights thereunder against EMI. *See* Dkt. No. 37 at 3-4, 6-8.

Shortly after Sony and EMI moved, the Court issued an Order requiring Plaintiffs to give notice as to whether they would file another amended pleading or rely on the FAC, and advising Plaintiffs that failure to timely amend could constitute a waiver of their amendment rights moving forward. Dkt. No. 39.

In response, Plaintiffs submitted a letter representing that they would file another

---

[2] 27 Red and the Estate of Robinson failed to respond to the FAC, and certificates of default were ultimately issued as to both. *See* Dkt. Nos. 33, 46.

amended complaint that would add both new claims and new parties, including Art of War among others. Dkt. No. 43.  Plaintiffs subsequently filed the operative SAC.   In contrast to its predecessor complaints, the SAC alleges "upon information and belief" that the EMI Administration Agreement – which Plaintiffs originally sued to enforce – in fact automatically terminated after three years but that EMI has nevertheless "continued to administer the Art of War catalog," including Plaintiffs' compositions. SAC ¶¶ 22-23.  Accordingly, rather than assert, as before, a claim for breach of the express EMI Administration Agreement, the SAC alleges that an "implied contract was created between [EMI] and [Sony] and Plaintiffs after the term of the EMI Administration Agreement ended," and that Sony and EMI breached that implied contract by failing to pay certain royalties directly to Plaintiffs (instead paying them, purportedly, to 27 Red, Robinson, and/or the unidentified Defendants).  SAC ¶¶ 52-60.  The SAC also includes what appears to be a declaratory judgment claim, seeking "a declaration . . . that the EMI Administration Agreement is terminated and that [EMI and Sony] no longer have the right to administer the Dru Hill musical compositions."  SAC ¶¶ 61-62.  The SAC does not name Art of War as a party, notwithstanding Plaintiffs' suggestion that they anticipated adding it.

Sony and EMI moved to dismiss the SAC.  Dkt. Nos. 53-55.  Five days after Defendants' motion was fully submitted, Art of War, now represented by the same counsel as Plaintiffs, moved to intervene in this action pursuant to Federal Rule of Civil Procedure 24.  Dkt. Nos. 62-63.  At Sony and EMI's request, the Court stayed further briefing on Art of War's motion pending resolution of the motion to dismiss.  Dkt. No. 65.

## II.  Discussion

### A.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff is required to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (additional internal quotation marks omitted).

In deciding a motion to dismiss, a court is required to "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Steginsky v. Xcelera Inc.* 741 F.3d 365, 368 (2d Cir. 2014). Still, it need not give "effect to legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). Generally, a court "must limit its analysis to the four corners of the complaint." *Vassilatos v. Ceram Tech. Int'l Ltd.*, 92-cv-4574, 1993 WL 177780, at *5 (S.D.N.Y. May 19, 1993) (citing *Kopec v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991)). It may, however, "consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v.*

5

*Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal alterations omitted) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

### B.    The SAC Fails to Plausibly Allege an Enforceable Implied Contract

The parties devote much of their briefing on Plaintiffs' implied contract claim to disputing whether the EMI Administration Agreement remains in force (and thus governs the subject matter of this lawsuit), and, relatedly, whether Plaintiffs have effectively pled themselves out of court by making inconsistent allegations on that point across their serial pleadings. In the Court's view, it is unnecessary to resolve these questions because the operative implied contract claim fails for a more fundamental reason, also invoked by Defendants: even taking all allegations in the SAC to be true and disregarding entirely the first two complaints, Plaintiffs still fall short of stating a plausible claim to relief as against EMI and Sony.

As a preliminary matter, the Court declines Plaintiffs' invitation to convert the motion to dismiss into one for summary judgment and to reserve decision until after discovery. The basis for Plaintiffs' request is that this matter purportedly "cannot be resolved without discovery," which is necessary "to determine if the [EMI Administration Agreement] is terminated." Plaintiffs' Opposition to Defendants EMI & Sony's Motion to Dismiss, Dkt. No. 58 ("Opp."), at 2. To that end, Plaintiffs submit with their opposition papers a declaration by Plaintiff Andrews setting forth matters that, Plaintiffs argue, support the proposition that the express Agreement has likely terminated. *See* Opp. at 4-5; Declaration of Mark Andrews p/k/a Sisqo In Support of Plaintiffs' Request Pursuant to Rule 56(d) to Stay this Court's Ruling on Defendants' Sony/EMI's Motion to Dismiss, Dkt. No. 59 (the "Andrews Declaration"). Because, as suggested above and discussed further below, the Court concludes that Plaintiffs' claims may not

6

proceed even assuming that the EMI Administration Agreement has terminated, it finds that conversion and discovery are unwarranted. *See, e.g., Main Street Legal Servs., Inc. v. Nat'l Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016) ("A plaintiff who has failed adequately to state a claim is not entitled to discovery."); *see also Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 357 (S.D.N.Y. 2016) ("The ultimate decision of whether to convert a Rule 12(b)(6) motion into a Rule 56 motion is discretionary."). Absent a conversion, it would be inappropriate for the Court to consider the Andrews Affidavit, which asserts facts not alleged in the SAC, in resolving Defendants' motion. And, accordingly, it does not. *See, e.g., Burrell v. State Farm Fire & Cas. Co.*, 00-cv-5733, 2001 WL 797461, at *10 (S.D.N.Y. Jul. 12, 2001) (refusing to consider allegations made only in affidavits in opposition to motion to dismiss); *see also Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs.")

The Court will now discuss the pertinent grounds for dismissal.

### 1. The SAC Does Not Plausibly Allege the Existence of an Implied Contract

Under New York law,[3] "to make a claim for breach of contract, a plaintiff must allege: (1) the existence of an agreement between itself and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by the defendant; and

---

[3] Although the Court is unaware of any express agreement, the parties all appear to assume that New York law applies to Plaintiffs' implied contract claim. All cite cases applying New York law throughout their briefing on Defendants' motion to dismiss, and no party argues that the substantive law of any other jurisdiction should govern. Accordingly, the Court will apply New York law. *See, e.g., Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark, N.J.*, 160 F.3d 124, 128 (2d Cir. 1998) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.") (internal quotation marks omitted).

(4) damages to the plaintiff caused by that defendant's breach." *Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 303 (S.D.N.Y. 2011) (citing *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)). With respect to the first element, "a complaint must 'allege the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated." *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (quoting *Sirohi v. Trs. of Columbia Univ.*, 162 F.3d 1148, 1998 WL 642463, at *2 (2d Cir. 1998) (Summary Order)) (additional internal quotation marks omitted). "A complaint 'fails to sufficiently plead the existence of a contract' if it does not provide 'factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms.'" *Id.* (quoting *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand*, 455 Fed. App'x 102, 104 (2d Cir. 2012) (Summary Order)).

"[A]bsent a written agreement between the parties, a contract may be implied where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 455 (S.D.N.Y. 2014). "An implied-in-fact contract is 'just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct.'" *Ellis v. Provident Life & Accident Ins. Co.*, 3 F. Supp. 2d 399, 409 (S.D.N.Y. 1998), *aff'd*, 172 F.3d 37 (2d Cir. 1999) (quoting *Jemzura v. Jemzura*, 36 N.Y.2d 496, 504, 330 N.E.2d 414, 420, 369 N.Y.S.2d 400, 408 (1975)). Accordingly, "[a]n implied-in-fact contract requires all of the elements required of any valid contract, including consideration, mutual assent, legal capacity, and legal subject matter." *Murray v. Northrop*

*Grumman Info. Tech., Inc.*, 444 F.3d 169, 178 (2d Cir. 2006).

Plaintiffs make essentially one substantive allegation in support of their implied contract claim: that, following the purported termination of the EMI Administration Agreement, EMI "continued to administer the Art of War catalog" and "collect royalties due Plaintiffs." SAC ¶¶ 23, 53.  That is insufficient without more to allege the existence of an implied contract.

Plaintiffs fail to allege any of the circumstances surrounding the purported contract's formation.  Nor do they allege a course of conduct or dealing by the parties to the contract, or any other facts from which the Court could infer the intention or assent to be bound.  Other than a generalized requirement that EMI/Sony pay royalties, Plaintiffs do not allege the parties' obligations, or any other pertinent terms of the purported contract.  As perhaps a natural corollary, they fail to plead their own performance under the alleged contract, even generally. Courts in this District have frequently dismissed implied contract claims reflecting similar deficiencies.  *See, e.g.*, *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 365-66 (S.D.N.Y. 2016) (complaint was "devoid of any facts plausibly suggesting that plaintiff continued to [perform under the alleged contract] for a period of nearly four years" following expiration of express agreement); *Childers*, 36 F. Supp. 3d at 313 (complaint did "not allege any conduct on the part of the [Defendant], or any other facts, sufficient to infer an intention on the part of the [Defendant] to be bound in a contractual relationship with Plaintiffs . . . or sufficient to infer that the [Defendant] received consideration for entering into the alleged agreement"); *Soley v. Wasserman*, 823 F. Supp. 2d 221, 231 (S.D.N.Y. 2011) (complaint "allege[d] neither (1) specific terms of a purported agreement, nor (2) specific interactions between [the parties] that would establish those specific terms and demonstrate the parties' intent to be bound by those

terms"); *Ancile*, 784 F. Supp. 2d at 304-06 (allegations of prior course of dealing between parties insufficient to plausibly allege implied contractual obligations).

It may generally be true, as Plaintiffs note, that when "after the expiration of a contract fixing the reciprocal rights and obligations of the parties, they continue to do business together, the conduct of the parties may at times permit, or even constrain, a finding that the parties impliedly agree that their rights and obligations in connection with such business should continue to be measured as provided in the old contract." *See, e.g.*, *Computerized Med. Imaging Equip., Inc. v. Diasonics Ultrasound, Inc.*, 303 A.D.2d 962, 964, 758 N.Y.S.2d 228, 230 (N.Y. App. Div. 2003) (internal quotation marks omitted). But it is clear from the SAC that such circumstances are not alleged here. The only even potentially relevant expired contract that is identified in the SAC, the EMI Administration Agreement, undisputedly ran between EMI and Art of War – not EMI and Plaintiffs. SAC ¶ 21. As such, even construing the SAC to allege that EMI/Sony continued to discharge certain obligations under the EMI Administration Agreement after that Agreement purportedly terminated, that would still provide no basis to infer the existence of an implied contract on which Plaintiffs could sue. In any event, "[t]he fact that the parties continue to deal under some sort of informal arrangement does not, without more, mean that all the terms of the expired formal contract continue to apply," and "unless an intent to make . . . a new contract is expressed or may be fairly inferred from the conduct of the parties, the obligations of the parties are as a matter of law not measured by the terms of the contract which has expired." *Twitchell v. Town of Pittsford*, 106 A.D.2d 903, 904-05, 483 N.Y.S.2d 524, 525-26 (N.Y. App. Div. 1984) (internal quotation marks omitted). No such expression or conduct is alleged here.

10

The Court is mindful "that the existence of an implied-in-fact contract is ordinarily a question of fact for the jury." *Verint*, 157 F. Supp. 3d at 366. But it remains incumbent upon Plaintiffs to allege sufficient facts to permit at least a reasonable inference that such a contract exists. The SAC does not satisfy that requirement.

### 2.    The Implied Contract, As Alleged, Would be Barred by New York's Statute of Frauds

Even if the SAC did plausibly allege the existence of an implied contract, that contract would be barred by New York's Statute of Frauds and subject to dismissal on that independent ground. *See, e.g.*, *Mitchell v. Faulkner*, 10-cv-8173, 2013 WL 150254, at *4 (S.D.N.Y. Jan. 15, 2013), *aff'd*, 531 Fed. App'x 136 (2d Cir. 2013) (Summary Order) ("Under New York law, a party may properly move for judgment dismissing one or more causes of action on the ground that the cause of action may not be maintained because of the Statute of Frauds."); *see also Zeising v. Kelly*, 152 F. Supp. 2d 335, 343 (S.D.N.Y. 2001) ("Consideration of the Statute of Frauds as an affirmative defense is appropriate on a motion to dismiss, as such a motion is intended to weed out meritless claims, avoiding needless efforts on the parts of the parties and the Court and avoiding needless discovery.").

As Defendants correctly note, the Statute of Frauds renders unenforceable unwritten agreements that are impossible, by their own terms, to complete within one year of their creation. *Mitchell*, 2013 WL 150254, at *4; N.Y. Gen. Obligations Law § 5–701(a)(1). "[C]ontracts of indefinite duration are deemed to be incapable of being performed within a year, and thus fall within the ambit of the Statute of Frauds." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 419 (S.D.N.Y. 2007) (internal quotation marks omitted). New York courts have specifically "determined that open-ended oral agreements for the payment of royalties . . . are subject to the

11

Statute of Frauds" under this provision. *Mitchell*, 2013 WL 150254, at *4; *Sirico v. F.G.G. Prods., Inc.*, 71 A.D.3d 429, 434, 896 N.Y.S.2d 61, 66 (N.Y. App. Div. 2010) ("alleged implied contract for royalties would be unenforceable since any agreement to pay royalties extending beyond one year must be in writing to satisfy the statute of frauds"); *Grossberg v. Double H. Licensing Corp.*, 86 A.D.2d 565, 565-66, 446 N.Y.S.2d 296, 297 (N.Y. App. Div. 1982) (where "liability endured so long as a single record . . . was sold anywhere in the world," the "agreement could not be performed within one year and the statute [of frauds] is applicable").

The implied contract at issue here, by its alleged terms, falls squarely within the Statute of Frauds. Plaintiffs, perhaps tellingly, do not bother to argue otherwise, or, indeed, to address Defendants' Statute-of-Frauds contention in any way. The SAC alleges that the implied contract formed upon the termination of the EMI Administration Agreement in approximately 2005 and that it requires EMI and Sony "to pay and account to Plaintiffs . . . for royalties collected on their behalf." SAC ¶¶ 21-22, 54-57. The SAC does not allege any termination provision or end date applicable to this contract, and indeed Plaintiffs appear to seek all royalties that purportedly went unpaid "from and after 2005," without limitation. *Id.* ¶¶ 56-60. The only available inference is that Plaintiffs allege an obligation on the part of EMI/Sony to pay royalties for as long as their compositions generated them. As such, they allege a contract of indefinite duration – the very sort of implied contract precluded by the Statute of Frauds. *See, e.g.*, *Mitchell*, 2013 WL 150254, at *5-6 (oral agreement to share royalties barred by Statute of Frauds because complaint alleged generalized, indefinite promises and was "silent as to a date at which time the payment of royalties would be terminated"); *see also Bayou Hedge Fund*, 534 F. Supp. 2d at 419 (because "[n]o termination provision, express or implied, [was] alleged," contract was, "[b]y its pleaded

terms . . . a contract of indefinite duration")   Plaintiffs' implied contract claim is subject to dismissal on this additional basis.

For all of these reasons, the implied contract claim against EMI and Sony is DISMISSED.

### C.    Plaintiffs Lack Standing to Assert the Declaratory Judgment Claim

Sony and EMI also seek dismissal of Plaintiffs' declaratory judgment claim.  As noted, that claim seeks a declaration that "the EMI Administration Agreement is terminated and that the EMI Defendants and Defendant Sony/ATV no longer have the right to administer the Dru Hill musical compositions."  SAC ¶ 62.  Defendants argue principally that Plaintiffs lack standing to assert this claim, or, alternatively, that the Court should decline to exercise its discretionary jurisdiction over the claim because it is substantially duplicative of Plaintiffs' implied contract claim.  *See* Br. at 19-21.  With the former point, at least, the Court agrees.

Pursuant to the Declaratory Judgment Act, a district court may, "[i]n a case of actual controversy within its jurisdiction . . . declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  As a general matter, courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies the subject matter jurisdictional prerequisites."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  In deciding whether to exercise jurisdiction, a court must consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005)).  The

Declaratory Judgment Act "does not expand jurisdiction" or "provide an independent cause of action." *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993). Rather, "[i]ts operation is procedural only – to provide a form of relief previously unavailable." *Id.* "Therefore, a court may only enter a declaratory judgment in favor of a party who has a substantive claim of right to such relief." *Id.*; *see also Travelers Property Cas. Corp. v. Winterthur Int'l*, 02-cv-2406, 2002 WL 1391920, at *5 (S.D.N.Y. Jun. 25, 2002) (when entertaining a suit seeking declaratory relief, "a court sitting in diversity must tailor its decision to the substantive rights recognized by state law"); *Richards v. Select Ins. Co., Inc.*, 40 F. Supp. 2d 163, 169 (S.D.N.Y. 1999) (availability of declaratory judgment "does not . . . create an additional cause of action or expand the range of factual disputes that may be decided by a district court sitting in diversity").

Under New York law,[4] "the terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract." *Rajamin v. Deutsche Bank Nat.*

---

[4] The EMI Administration Agreement is governed by New York law pursuant to an express choice-of-law provision. *See* Declaration of Lori Adler in Support of Motion to Dismiss ("Adler Dec.") Ex. 1, Dkt. No. 55-1 (EMI Administration Agreement), ¶ 11(a). Although the EMI Administration Agreement is not attached to the SAC or explicitly incorporated therein by reference, it is referred to throughout the SAC, and Plaintiffs' declaratory judgment claim, at least, necessarily "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (internal quotation marks omitted). Defendants have submitted a copy of the Agreement with their motion to dismiss, and Plaintiffs do not challenge its authenticity. Accordingly, the Court may consider the EMI Administration Agreement at the pleading stage without converting the motion to dismiss into one for summary judgment. *Id.* (noting that courts may generally consider a "contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint") (internal quotation marks omitted).

*Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014); *see also  Mendel v. Henry Phipps Plaza West Inc.*, 6 N.Y.3d 783, 786, 844 N.E.2d 748, 751, 811 N.Y.S.2d 294, 297 (2006) (mere incidental beneficiaries of a contract may not sue for breach of the contract).  "Parties who lack standing to enforce an agreement also lack standing to seek a declaration of rights under the contract." *Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC*, 06-cv-1510, 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006); *see also Rajamin*, 757 F.3d at 84-87 (mortgagors lacked both constitutional and prudential standing to seek declaration that loan assignment contracts to which they were neither parties nor intended third-party beneficiaries were unenforceable); *cf. Collin Cty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) ("Since it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action.").

The SAC does not allege that Plaintiffs are parties to or intended third-party beneficiaries of the EMI Administration Agreement.  The Agreement itself expressly provides that Art of War "writers," including Plaintiffs, "shall not be third-party beneficiaries under this Agreement or enjoy any rights as against [EMI]."  Adler Dec. Ex. 1 at 1, ¶ 5(b).  Accordingly, Plaintiffs would lack standing to maintain a suit to enforce the Agreement's terms, and, in turn, they lack standing to seek a declaration of rights under the Agreement.  Therefore, the declaratory judgment claim must be dismissed.  *See, e.g., Rajamin*, 757 F.3d at 84-87; *Senisi v. John Wiley & Sons, Inc.*, 13-cv-3314, 2014 U.S. Dist. LEXIS 44027, at *24-27 (S.D.N.Y. Mar. 28, 2014) (non-parties to stock photograph agency contracts "proffer[ed] [insufficient] factual material in support of their

claimed third party beneficiary status" and "accordingly, failed to state a claim for declaratory

relief" pursuant to those contracts); *Winterthur*, 2002 WL 1391920, at *5 (stranger to insurance

contract precluded from bringing declaratory judgment suit to determine whether insurer owed

coverage under the policy, even if plaintiff would benefit from the policy).

Accordingly, Plaintiffs' declaratory judgment claim is DISMISSED.

### D.    Leave to Amend is Unwarranted

In a single footnote, Plaintiffs assert, without explanation or authority, that the Court

should permit them to amend the SAC, at least to plead the implied contract claim with "more

particularity," in the event of dismissal. *See* Opp. at 6 n.2.  Because Plaintiffs have already filed

two amended complaints, any further amendment is governed by Federal Rule of Civil Procedure

15(a)(2), which provides that a party may amend its pleading "only with the opposing party's

written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Although under this Rule courts

generally should "freely give leave when justice so requires, there are times when granting such

leave may be inappropriate." *Duckett v. Williams*, 86 F. Supp. 3d 268, 275 (S.D.N.Y. 2015)

(internal quotation marks, citation, and brackets omitted).  For example, "a motion to amend

should be denied if there is an apparent or declared reason – such as undue delay, bad faith or

dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue

prejudice to the opposing party by virtue of the allowance of the amendment, or futility of

amendment." *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69

(2d Cir. 1998) (internal quotation marks and alterations omitted).

Plaintiffs have already filed three pleadings in this action featuring several different

theories of liability, precipitating two motions to dismiss and a Court Order expressly advising

16

Plaintiffs that joining issue on such a motion could constitute waiver of further amendment rights. Dkt. Nos. 1, 18, 36-38, 39, 50, 53-55. The latest request to amend is devoid even of a suggestion as to the sorts of facts that Plaintiffs intend to marshal to cure the SAC's deficiencies. Moreover, even if Plaintiffs could plead sufficient facts in a third amended complaint to plausibly allege the existence of an implied contract, Plaintiffs' claim would be caught between the Scylla and Charybdis presented by the Statute of Frauds and the applicable statute of limitations. Specifically, an implied contract alleged to run any longer than one year would be precluded as discussed above, and an implied contract alleged to run for only a year or less from its purported creation in or around 2005 would yield only a claim falling well outside New York's six-year limitations period. *See, e.g., Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 260 (S.D.N.Y. 2008) ("New York's statute of limitations for breach of an express or implied contract is six years.") (citing N.Y.C.P.L.R. § 213(2)). Accordingly, the Court concludes that leave to amend is inappropriate under the circumstances and, in any event, would be futile. *See, e.g., City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (denying leave to amend when "plaintiffs have identified no additional facts or legal theories . . . they might assert if given leave to amend") (footnote omitted); *Duckett*, 86 F. Supp. 3d at 276 (denying leave to file second amended complaint because plaintiff failed to identify additional facts to be alleged and the amendment "would be an exercise in futility"); *see also In re Refco Capital Mkts., Ltd. Brokerage Customer Securities Litig.*, Nos. 06–cv–643 *et seq.*, 2008 WL 4962985, at *2 (S.D.N.Y. Nov. 20, 2008) ("[w]hile pleading is not a game of skill in which one misstep may be decisive to the outcome, neither is it an interactive game in which plaintiffs file a complaint, and then bat it back and forth with the Court over a rhetorical net until a viable

17

complaint emerges") (citations and internal quotation marks omitted).

Plaintiffs' request for leave to amend is DENIED.

**E.      AOW's Motion to Intervene Is Substantially Mooted by the Dismissal of All Claims Against Sony and EMI and, In Any Event, Was Untimely Made**

Finally, the dismissal of all pending claims against Sony and EMI substantially moots Art

of War's motion to intervene, which is overwhelming premised on Art of War's purported

claims against those very same parties, and to a lesser extent, against parties (such as 27 Red and

the Estate of Robinson) that have already defaulted.  *See* Dkt. No. 62-63-1; *see also Kunz v.*

*N.Y.S. Comm'n on Judicial Misconduct*, 155 Fed. App'x 21, 22 (2d Cir. 2005) (Summary Order)

("where the action in which a litigant seeks to intervene has been discontinued, the motion to

intervene is rendered moot").

To the extent that it is not moot, the motion to intervene is denied as untimely.  Art of

War moves for intervention as of right or, in the alternative, intervention by permission pursuant

to Federal Rules of Civil Procedure 24(a) and 24(b), respectively.  Under both provisions, the

"proposed intervenor bears the burden of demonstrating that it meets the requirements for

intervention," and the "threshold inquiry is whether the application for intervention is timely."

*Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 (S.D.N.Y. 2016).  The Court of Appeals

has identified four factors to be taken into account in determining whether a motion to intervene

is timely: "(a) the length of time the applicant knew or should have known of his interest before

making the motion; (b) prejudice to existing parties resulting from the applicant's delay;

(c) prejudice to applicant if the motion is denied; and (d) presence of unusual circumstances

militating for or against a finding of timeliness."  *United States v. State of N.Y.*, 820 F.2d 554,

557 (2d Cir. 1987).  Of these factors, the length of time from notice to application is "[a]mong

the most important." *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996).  At

bottom, however, "the determination of whether a motion to intervene is timely must be

'evaluated against the totality of the circumstances before the court.'"   *Kamdem-Ouaffo*, 314

F.R.D. at 134 (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001)); *see also*

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994) ("[t]imeliness defies precise

definition").

Art of War's moving papers tacitly concede that it had actual knowledge of this lawsuit

as early as May 2016, at or around the time that Plaintiffs advised the Court in response to

Defendants' first motion to dismiss that they anticipated adding Art of War as a party in a

forthcoming amended pleading.  Dkt. No. 63 at 4 & n.1.  Of course, Plaintiffs did not name Art

of War as a party in the SAC, and Art of War, for its part, waited more than four months – until

after the SAC was filed and just days after briefing on the instant motion to dismiss was

complete – before applying to intervene.

Moreover, at the time of its application, Art of War had been on constructive notice of its

potential interest in this case for approximately a year.  As discussed above, Plaintiffs

commenced this action in September 2015, initially asserting breach of contract claims premised

on their purported status as third-party beneficiaries of the EMI Administration Agreement, to

which Art of War is, or was, undisputedly a party.  Indeed, the original Complaint makes

repeated references to Art of War, its interest in the Agreement, and EMI/Sony's alleged failure

to perform thereunder. *See, e.g.*, Comp. ¶¶ 13-15, 18, 23, 32-35; *see also Floyd v. City of N.Y.*,

302 F.R.D. 69, 89 (S.D.N.Y. 2014) ("Numerous courts have found that, among other factors, the

initiation of a lawsuit where the complaint addresses the would-be intervenors' interests may

19

trigger constructive notice.") (collecting cases); *see also MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir. 2006) (motion to intervene untimely in part because plaintiff's "complaint and other filings . . . are publicly available for anyone to access"); *Catanzano*, 103 F.3d at 233 (applicant should have known of the issue of interest because it had been "clearly present in the litigation from the very beginning").

Art of War offers no compelling justification for its delay, only asserting vaguely that it "did not have knowledge of this dispute until Plaintiffs informed" it. Dkt. No. 63 at 4. But "[d]elay is not measured solely subjectively" precisely because, "if that were the test, a putative intervenor could always claim it did not know it needed to intervene until the eve of its motion." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001). The Court of Appeals has deemed intervention applications following delays of comparable length untimely. *See, e.g.*, *MasterCard*, 471 F.3d at 390-91 (five to six-month delay) *Butler*, 250 F.3d at 182 (twelve to thirteen-month delay); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 198-99 (2d Cir. 2000) (eight-month delay). Under the circumstances, so too is Art of War's.

Art of War's motion to intervene is DENIED.

## III.   Conclusion

For the foregoing reasons, Sony and EMI's motion to dismiss is GRANTED with prejudice, and Art of War's motion to intervene is DENIED. In light of these rulings, Defendants' request for oral argument is DENIED as moot.

Should Plaintiffs wish to move for default judgment against the remaining Defendants, they shall file a motion on notice via ECF on or before March 17, 2017. Plaintiffs' submission shall include a memorandum of law and supporting affidavits setting forth the legal and factual

basis for the amount of damages sought.  Plaintiffs should bear in mind that, even upon entry of

default, they "must . . . substantiate [their] claim[s] with evidence to prove the extent of

damages." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012).   Defendants'

opposition, if any, shall be filed two weeks after Plaintiffs' motion, and Plaintiffs' reply, if any,

shall be due one week thereafter.

      This resolves Dkt. Nos. 36, 53, 61, and 62.

      SO ORDERED.

Dated: February ___, 2017
      New York, New York

                                    ALISON J. NATHAN
                                 United States District Judge