UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Mark Andrews, *et al.*,

        Plaintiffs,

—v—

27 Red Music Publishing, LLC, *et al.*,

        Defendants.

15-CV-7544 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Before the Court is Plaintiff's motion for the entry of default judgment. For the following reasons, the Court GRANTS the motion IN PART and enters judgment as to Defendants' liability on Plaintiffs' cause of action for conversion. The Court reserves judgment on damages pending submission of supplemental briefing.

## I.    BACKGROUND

On September 23, 2015, Plaintiffs Mark Andrews, James Green, and Larry Anthony, Jr. filed a complaint against Defendants the Estate of Rhondo Robinson, 27 Red Music, LLC, Sony/ATV Music Publishing, LLC ("Sony") as successor to EMI Music Publishing, and several other unidentified affiliates, asserting claims for breach of contract, breach of fiduciary duty, and conversion. *See* Dkt. No. 1. In February 2016, Plaintiffs filed a first amended complaint. Dkt. No. 18. Defendants Sony, together with EMI April Music, Inc. and EMI Blackwood Music, Inc. (the "EMI Defendants")[1] then moved to dismiss the first amended complaint. Dkt. Nos. 36-38.

---

[1] The EMI Defendants brought this motion to dismiss, contending that they had been sued incorrectly as Sony/ATV Music Publishing LLC. *See* Dkt. No. 36 at 1, Dkt. No. 66 at 2 n.1. Plaintiffs' subsequent amended complaint added both entities as separate Defendants. *See* Dkt. No. 50. No distinctions between the entities are pertinent to the present motion.

1

Plaintiffs subsequently filed a second amended complaint, which altered their breach of contract claim against Sony and the EMI Defendants, and added a declaratory judgment claim against Sony and the EMI Defendants. Dkt. No. 43 at 1–2; Dkt. No. 50 ¶¶ 52-62. Sony and the EMI Defendants moved to dismiss the second amended complaint. Dkt. Nos. 53-55. On February 24, 2017, the Court granted this motion to dismiss. Dkt. No. 66.

On October 6, 2017, Plaintiffs filed a third amended complaint against 27 Red Music Publishing LLC, successor to 27 Red Music, LLC, The Estate of Rhondo Robinson, Rich Kid Music, LLC, and Rudolph Carroll d/b/a Image Entertainment, LLC ("Carroll").[2] Third Amended Complaint, Dkt. No. 81. As relevant here, Plaintiffs allege that Mark Andrews entered into a "Collection Letter" agreement with Defendants 27 Red Music Publishing and Robinson that authorized them to collect unpaid royalties from the music publishing company EMI for the period 1996 to 2005 "on behalf of Mark Andrews and the like relative to administration of Yeah/Art of War Music Publishing." *Id.* ¶¶ 20-21. Plaintiffs contend that Defendants 27 Red Music Publishing, Rich Kid, and Robinson continued to collect royalties from EMI on behalf of Plaintiff Andrews for the period 2005 to 2015, but failed to remit them to him. *Id.* ¶¶ 22-23. As to Plaintiff Green, Plaintiffs allege that Defendant Carroll submitted a "Letter of Direction" with a forged signature from Plaintiff Green to EMI to collect royalties on his behalf, but failed to remit them to Green. *Id.* ¶¶ 24-27. And Plaintiffs allege that Defendants collected royalties on behalf of Plaintiff Anthony under the putative authority of the Collection Agreement. *Id.* ¶¶ 25-26.

---

[2] Plaintiffs initially named both Rudolph Carroll and Mike Richardson, together doing business as Image Entertainment, LLC, as Defendants in this action. Third Amended Complaint ¶¶ 13–15. After Plaintiffs failed to effectuate service on Mr. Richardson, the Court dismissed him from this action. Dkt. No. 95.

2

Copies of the Third Amended Complaint were served on Defendants the Estate of Rhondo Robinson and 27 Red Music Publishing, on November 13, 2017 and January 19, 2018, respectively, and on Rich Kid Music and Carroll on January 5, 2018. Dkt. Nos. 99-100, 92-93. Proof of service was filed on January 9, 2018 and April 20, 2018. *Id.* On April 20, 2018, Plaintiffs filed a request to enter a default against the Defendants, which the Clerk of Court entered the same day. *See* Dkt. Nos. 102, 104-07.

On May 24, 2018, Plaintiffs moved for default judgment as to the Defendants 27 Red Music Publishing, the Estate of Rhondo Robinson, Rich Kid Music, and Carroll. Dkt. No. 110. No opposition has been filed by the defaulting defendants.

## II. JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds $75,000.00, and there is complete diversity between the parties. *See* Third Amended Complaint ¶¶ 3-6, 8-9, 11, 13-15, 44, 46. The Court has personal jurisdiction over Defendants under N.Y. C.P.L.R. § 302(a)(1) because each Defendant has transacted business in New York. *See* Third Amended Complaint ¶¶ 7, 10, 12, 16-17.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets out a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates

the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted by Rule 54(c)." *Mickalis Pawn Shop*, 645 F.3d at 128. Rule 54(c) states that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Whether entry of default judgment at the second step is appropriate depends upon whether the allegations against the defaulting party are well-pleaded. *See Mickalis Pawn Shop*, 645 F.3d at 137. Once a party is in default, "a district court must accept as true all of the factual allegations of the non-defaulting party and draw all reasonable inferences in its favor." *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014). But because a party in default does not admit conclusions of law, a district court must determine whether the plaintiff's allegations are sufficient to establish the defendant's liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Belizare*, 61 F. Supp. 3d at 344.

## IV. DISCUSSION

The Court finds that Defendants are in default and that default judgment is warranted for Plaintiffs' conversion claims. Default judgment is not warranted, however, for the breach of contract and breach of fiduciary duty claims because Plaintiffs' allegations do not establish the Defendants' liability as a matter of law.

### A. Defendants Are in Default.

Defendants have not participated in this litigation, despite service of the complaint, the instant motion, and its supporting papers. Accordingly, the clerk properly entered their default. *See* Fed. R. Civ. P. 55(a).

### B. Plaintiff Establishes a Prima Facie Case for Recovery on its Conversion Claims.

The Court turns next to liability, finding that Plaintiffs' allegations are sufficient to establish a prima facie case for recovery only on their conversion claims.

#### a. Conversion Claims

First, the Court considers Plaintiffs' motion for default judgment on the conversion claims. "Conversion is the unauthorized exercise of dominion or control over specifically identified property which interferes with the owner's rights." *Hoffman v. Unterberg*, 780 N.Y.S.2d 617, 619 (2d Dep't 2004), *abrogated on other grounds by Tzolis v. Wolff*, 855 N.Y.S.2d 6 (2008). Money may be the subject of a conversion claim if it is a specifically identifiable fund obligated to be treated in a certain manner, rather than general money damages. *Hoffman*, 780 N.Y.S.2d at 619.

If the original possession is lawful, conversion does not occur until the defendant refuses the plaintiff's demand to return the property. *Colodney v. Continuum Health Partners, Inc.*, No. 03-CV-727 (DLC), 2004 WL 829158, at *11 (S.D.N.Y. Apr. 15, 2004) (quoting *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (per curiam)). But demand and refusal are not required when "the custodian 'knows it has no right to the goods.'" *Salonclick LLC v. SuperEgo Mgmt. LLC*, No. 16-CV-2555 (KMW), 2017 WL 1906865, at *3 (S.D.N.Y. May 8, 2017) (quoting *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 370-71 (S.D.N.Y. 2014)).

"[A]n action for conversion of money may not lie," however, when "damages are merely being sought for breach of contract." *FS Media Holding Co. (Jersey) Ltd. v. Harrison*, No. 13-CV-3144 (SAS), 2013 WL 5780771, at *4 (S.D.N.Y. Oct. 25, 2013) (quotation omitted). Conversion requires acts that are wrongful or unlawful, not mere contractual violations. *Global View Ltd. Venture Capital v. Great Cent. Basin Exploration, LLC*, 288 F. Supp. 2d 473, 479 (S.D.N.Y. 2003). The availability of punitive damages can distinguish conversion from a mere breach of contract. *See Fraser v. Doubleday & Co.*, 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984); *FS Media Holding Co.*, 2013 WL 5780771, at *5 (denying a motion to dismiss a conversion claim as duplicative of a breach of contract claim because there was a plausible inference that punitive damages would be available).

### i. Mark Andrews Conversion Claim

Taking the allegations in the Third Amended Complaint as true and drawing inferences in Plaintiffs' favor, Plaintiff Andrews's allegations establish Defendants' liability. Defendants 27 Red Music Publishing, Rich Kid, and Robinson's collection of royalties on his behalf during the period of 2005-2015 was unauthorized, because the Collection Letter only authorized the collection of royalties earned from 1996-2005. Dkt. No. 81. ¶¶ 20-22. The facts that Defendants continued to collect royalty payments on behalf of Andrews and that the invoices indicated that the payments were for Andrews ensured that Defendants were aware that the payments were not rightfully theirs to keep. *See id.*; Dkt. No. 116, Ex. A. The summary of accounting provided by EMI shows that the funds Plaintiffs alleged were converted are specifically identifiable payments that were each linked to a certain recording artist for a certain period of time. *Id.* Accordingly, they may be the basis for a money conversion claim under New York law.

These facts also distinguish the conversion claim from a mere breach of contract claim. The compensatory damages requested are not merely representative of breach of contract

damages or a right to repayment under the contract, but specific royalty funds intended for Andrews, which Defendants took control of through a false claim to authority. Further, there was not a valid contract between Andrews and Defendants for the years 2005-2015, so the conversion claim does not stem from a breach of contractual obligations. Additionally, punitive damages are available to Plaintiff for the conversion claim that would not be available under a breach of contract claim, which illustrates that it is not duplicative of a breach of contract claim. *See Fraser*, 587 F. Supp. at 1288; *FS Media Holding Co.*, 2013 WL 5780771 at *5.

### ii. Larry Anthony, Jr. Conversion Claim

For substantially the same reasons, Plaintiff Anthony's allegations also establish Defendants' liability. Defendants 27 Red Music Publishing, Rich Kid, and Robinson took control of specifically identifiable funds in which Anthony had a possessory interest in his capacity as an Art of War writer without authority to do so. *See* Dkt. No. 116 ¶ 5 & Ex. A; Dkt. No. 81 ¶¶ 21-22, 25-26. The Collection Letter did not authorize Defendants to collect royalties for Larry Anthony, Jr. from Sony and EMI for the period of 2005-2015. Dkt. No. 81 ¶¶ 20-22. Defendants' dominion over these royalty payments has interfered with Plaintiff Anthony's ability to collect and possess royalty payments owed to him.

### iii. James Green Conversion Claim

Plaintiff Green's allegations have also established Defendant's liability. Defendant Carroll took control over royalties that Green had a possessory interest in without authority to do so. Green did not authorize Defendant Carroll to collect royalty payments on his behalf; rather, the Third Amended Complaint alleges that Carroll was only able to gain control of the payments through forging Green's signature on the Letter of Direction, which also indicates that Carroll knew his dominion was wrongful. Dkt. No. 81. ¶¶ 24-27. This conversion claim is not duplicative of a breach of contract claim because Plaintiff Green alleges he did not authorize any

contract with Defendant. Defendant's dominion over these royalty payments has interfered with Plaintiff Green's ability to collect and possess royalty payments owed to him.

### b.     Breach of Contract Claims

The Court turns next to Plaintiffs' breach of contract claims. Under New York law, "to make a claim for breach of contract, a plaintiff must allege: (1) the existence of an agreement between itself and the defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by the defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Ancile Inv. Co. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 303 (S.D.N.Y. 2011).

Plaintiffs may state a claim for breach of contract based on a breach of terms that were not in the original contract if the contract has been modified. "Under New York law, parties may modify a contract by another agreement, by course of performance, or by conduct amounting to waiver or estoppel." *Kaplan v. Old Mut. PLC*, 526 F. App'x 70, 72 (2d Cir. 2013) (summary order) (quoting *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003)) (internal quotation marks omitted). A contract can only be modified by the parties' course of conduct if it "evince[s] a meeting of the minds." *O'Grady v. BlueCrest Capital Mgmt. LLP*, 111 F. Supp. 3d 494, 502 (S.D.N.Y. 2015); *see also Beacon Terminal Corp. v. Chemprene, Inc.*, 429 N.Y.S.2d 715, 718 (2d Dep't 1980) ("Fundamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms.").

No facts alleged in the complaint indicate that Defendants 27 Red Music Publishing, Rich Kid, and Robinson's collection of royalties beyond those earned for the contractual period of 1996-2005 was the result of a meeting of the minds, rather than a unilateral decision by Defendants. *See* Dkt. No. 81 ¶¶ 20-22. Since the Collection Letter could not be modified

without mutual assent and it only permits Defendants to receive and collect royalties for the period 1996-2005, Plaintiffs fail to plead a contractual provision that obligated Defendants to collect royalties for the 2005-2015 period and remit them to Plaintiffs. For substantially the same reasons explained in its opinion on the Motion to Dismiss, the Court finds that there are no circumstances present here that "provide [a] basis to infer the existence of an implied contract" incorporating all the terms of the expired contract. *Andrews v. Sony/ATV Music Publ'g, LLC*, No. 15-CV-7544 (AJN), 2017 WL 770614, at *5 (S.D.N.Y. Feb. 23, 2017); *see also Computerized Med. Imaging Equip., Inc. v. Diasonics Ultrasound, Inc.*, 758 N.Y.S.2d 228, 230 (4th Dep't 2003). Although Defendants' actions were not authorized by the Collection Letter, they also were not a breach of a contractual obligation. Accordingly, Plaintiffs Andrews and Anthony fail to establish Defendants' liability for breach of contract.

### c. Breach of Fiduciary Duty Claims

To state a claim for breach of fiduciary duty under New York law, a plaintiff must allege (1) that a fiduciary duty existed and (2) that it was breached. *See Solomon v. Siemens Indus., Inc.*, 8 F. Supp. 3d 261, 282 (E.D.N.Y. 2014); *Kurtzman v. Bergstol*, 835 N.Y.S.2d 644, 590 (2d Dep't 2007). Courts in this District and in the State of New York "have 'repeatedly rejected the existence of a fiduciary relationship between recording artists and their record label,'" and held that "[t]he fact that a defendant record company is contractually responsible for collecting royalties and passing them on to a plaintiff music artist does not, in itself, create a fiduciary relationship between parties." *Faulkner v. Arista Records LLC*, 602 F. Supp. 2d 470, 482 (S.D.N.Y. 2009) (quoting *Sony Music Entm't Inc. v. Robison*, No. 01-CV-6415 (LMM), 2002 WL 272406, at *3 (S.D.N.Y. Feb. 26, 2002)).

Although Defendants 27 Red Music Publishing, Rich Kid Music, and the Estate of Rhondo Robinson did not serve as Plaintiff Andrews's record company, their business

relationship stemmed from a contractual obligation for Defendants to collect royalties and pass them to Andrews. Dkt. No. 81 ¶¶ 20-21. There is nothing in the Third Amended Complaint that alleges sufficient "special circumstances" to turn this arms-length business relationship into a fiduciary relationship. *Faulkner*, 602 F. Supp. 2d at 482; *see also id.* at 482–84 (distinguishing an artist's "garden-variety arm's length transactions" with a record company from the "special relationship" in *Apple Records* between the Beatles and Capitol Records that lasted over multiple decades, endured a remarkable rise in popularity and success, and constituted up to 25 to 30 percent of Capitol Records' business); *see also Apple Records, Inc. v. Capitol Records, Inc.*, 529 N.Y.S.2d 279, 283 (1st Dep't 1988); *Cooper v. Sony Records Int'l*, No. 00-CV-233 (RMB), 2001 WL 1223492, at *5 n. 10 (S.D.N.Y. Oct. 15, 2001) (finding that "[u]nlike *Apple Records*, here there is no assertion of a special relationship beyond that which normally exists between contracting parties in an arms-length transaction.")).

Because the Court finds that no fiduciary relationship existed between Parties, Plaintiff Andrews fails to establish Defendants' liability for breach of fiduciary duty.

### C. Plaintiffs Must Submit Supplemental Briefing on Damages.

Having found liability on one of Plaintiffs' claims, the Court turns next to damages. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Instead, the district court must "conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Id.* The Court may conduct a hearing or may rely on the plaintiffs' submission of "detailed affidavits and documentary evidence" in order to determine this amount. *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

As explained further below, the Court requires supplemental briefing on this question. The Court therefore reserves judgment pending that submission.

### a. Compensatory Damages for Conversion

Damages for conversion are measured by the value of the property at the time of conversion plus interest. *See Kranz v. Town of Tusten*, 653 N.Y.S.2d 194, 195 (3d Dep't 1997); *Caballero v. Anselmo*, 759 F. Supp. 144, 148 (S.D.N.Y. 1991). Prevailing on a conversion claim entitles the party to prejudgment interest at the rate of 9 percent per annum. N.Y. C.P.L.R. § 5001(a); N.Y. C.P.L.R. § 5004; *Wells Fargo Bank, N.A. v. Nat'l Gasoline Wholesale, Inc.*, 577 F. App'x 58, 61 (2d Cir. 2014) (summary order). "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b). "New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date.'" *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998) (citing *155 Henry Owners Corp. v. Lovlyn Realty Co.*, 647 N.Y.S.2d 30, 32 (2d Dep't 1996). "District courts are afforded 'wide discretion' in determining a reasonable intermediate date from which to calculate prejudgment interest. *Wells Fargo Bank*, 577 F. App'x at 61 (quoting *Conway v. Icahn & Co.*, 16 F.3d 504, 512 (2d. Cir. 1994)).

The statute of limitations for conversion in New York is three years and "accrues at the time of conversion regardless of a plaintiff's knowledge of the conversion." *United Teamster Fund v. Magnacare Admin. Servs.*, 39 F. Supp. 3d 461, 478 (S.D.N.Y. 2014) (citing N.Y. C.P.L.R. § 214(3) and *Herman v. Depinies*, 273 A.D.2d 146, 147 (1st Dep't 2000)). "To the

11

extent the conversion claim seeks recovery for violations more than three years before the Complaint was filed, that portion of the claim is time-barred." *United Teamster Fund*, 39 F. Supp. 3d at 478. Accordingly, Plaintiffs are only entitled to recover amounts that were converted on or after September 23, 2012, since the Complaint was filed three years later, on September 23, 2015. Dkt. No. 1.

To support their claimed damages, Plaintiffs submitted a summary of accounting statements listing the royalty amounts they allege Defendants failed to pay. *See* Dkt. No. 116 ¶¶ 15–17; Dkt. No. 116-1, Ex. A. There are two deficiencies with this submission. First, Plaintiffs claim they are entitled to the full listed amounts. As explained above, however, they are only entitled to recover amounts that were converted on or after September 23, 2012. Second, Plaintiffs have not provided sufficient information for the Court to interpret the summary in order to determine the damages to which Plaintiffs are entitled. In particular, Plaintiffs do not explain the meaning of the "adjustment" column or how the Court should interpret the notation of an extra payment as to Plaintiff Anthony.

Accordingly, Plaintiffs shall submit supplemental briefing requesting compensatory damages limited to the limitations period. Plaintiffs' supplemental brief shall provide an explanation of their requested damages amount and identify legal authority in support of their request. On receipt of Plaintiffs' submission, the Court will evaluate whether a hearing or an inquest on damages is necessary.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for the entry of default judgment is GRANTED IN PART as to Defendants' liability to each Plaintiff for conversion. The Court reserves judgment on compensatory and punitive damages on the conversion claim.

Plaintiffs shall submit a supplemental brief in accordance with this Memorandum Opinion & Order on or before January 25, 2019. Plaintiffs shall serve this Memorandum Opinion & Order and its response brief on the Defendants and file an affidavit of service on the public docket within two days of the filing of each entry.

This resolves Dkt. No. 110.

SO ORDERED.

Dated: January 15, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge